# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 18-0017-WS |
| ) | |
| KAJUAN ODELL HUDSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on defendant Kajuan Odell Hudson's Motion to Suppress (doc. 16). The Motion has been fully briefed and is now ripe. The Court takes the Motion under submission without an evidentiary hearing.[1]

The Indictment (doc. 1) charges Hudson with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). According to the police report, the relevant facts, which have not been disputed for purposes of the Motion to Suppress, are as follows: At 2:25 a.m. on November 20, 2017, officers observed Hudson walking near the intersection of Government Blvd. and Pine Hill Drive. They approached him "to inquire as to why he was out walking so late due to several car burglaries that have occurred in the area recently." (Doc. 16, at 2.) During the ensuing "field interview," the officers asked Hudson to

---

[1] "Where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (citation omitted); *see also United States v. Horne*, 2006 WL 2668919, *5 (11th Cir. Sept. 18, 2006) (district court properly decided motions to suppress without a hearing because "Horne's motions presented issues of law, not fact," and "[n]either motion raised a disputed issue of fact that required resolution in an evidentiary hearing"). In the briefing schedule for Hudson's Motion, the Court indicated that an evidentiary hearing would not be set as a matter of course, and that "[t]o the extent that either side believes a hearing is necessary or appropriate, it must set forth a particularized explanation for this belief in its memorandum." (Doc. 17.) Defendant neither offered such an explanation nor even requested a hearing. Because there appear to be no disputed facts or credibility challenges that might necessitate a hearing, the Motion is taken under submission solely on the parties' written filings.

produce identification "and if he had anything illegal on him." (*Id.*) Hudson responded that he had a pistol in his left pocket. The officers followed up by asking whether Hudson had a permit for the concealed weapon. When Hudson answered in the negative, the officers placed him under arrest for carrying a concealed weapon without a permit. The Indictment followed.

Hudson's Motion to Suppress posits that the facts, as summarized above, "do not establish reasonable suspicion that Mr. Hudson was engaged in criminal activity as required by *Terry v. Ohio*." (Doc. 16, at 2.) Defendant asserts that he was merely walking down the street when the officers approached him, and that "[w]alking down the street is not suspicious conduct." (Doc. 22, ¶ 2.) Defendant further argues that he "was stopped and restrained while the police questioned him about his possible possession of a firearm." (*Id.*, ¶ 5.)

There were two distinct phases to the police-citizen interaction in this case, to-wit: (i) the officers' initial approach and inquiry as to why Hudson was out walking so late, the request for identification, and the query as to whether he was carrying contraband; and (ii) the officers' questioning of Hudson about the pistol in his left pocket, and his subsequent arrest. For Fourth Amendment purposes, each of these segments must be analyzed separately because each represents a different category of police-citizen encounter for Fourth Amendment purposes. *See United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) ("We have identified three broad categories of police-citizen encounters for purposes of our Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.") (citation and internal quotation marks omitted).

As an initial matter, reasonable suspicion was not required before the officers could approach Hudson on the street and ask him basic questions. Authority is legion for the proposition that the Fourth Amendment is not implicated by consensual encounters. *See, e.g., Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen").[2] All information before the Court is

---

[2] *See also Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) ("As an initial matter, the officers' actions in approaching the four men late (Continued)

that the initial encounter was consensual; indeed, the officers simply approached Hudson, asked him why he was out walking around at 2:25 a.m., asked to examine his identification, and asked him if he had any contraband. There are no record facts and no allegations that might reasonably support a finding that Hudson's cooperation was induced by coercive means, that a reasonable person in Hudson's position would not have felt free to terminate the encounter, or that his freedom of movement was in any way restrained by physical force or by submission to a show of authority at the time the preliminary questions were posed.

Simply put, defendant has identified no facts or circumstances suggesting that, at any time during the initial batch of questions, "the encounter [was] no longer consensual, a seizure has occurred, and the citizen's Fourth Amendment rights are implicated." *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011).³ All that happened initially was the officers approached Hudson on the street and asked him a few questions. Those circumstances, without more, do not implicate Fourth Amendment rights. After all, "[t]he test for distinguishing a consensual encounter from a seizure or an arrest is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Aponte*,

---

in the evening of February 6, 2009 and asking them questions did not implicate the Fourth Amendment at all."); *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.") (citation omitted); *United States v. Aponte*, 662 Fed.Appx. 780, 784 (11th Cir. Oct. 26, 2016) (11th Cir. Oct. 26, 2016) ("So long as the encounter is consensual, officers may ask questions of individuals [or] ask to examine an individual's identification … without implicating the Fourth Amendment."); *United States v. Ward*, 634 Fed.Appx. 278, 280 (11th Cir. Dec. 29, 2015) ("The Supreme Court has held that police officers may, without any level of suspicion of criminal activity, pose questions, ask for identification, and request consent to search luggage.").

³ The Eleventh Circuit has identified the following non-exhaustive list of factors as relevant guidance in determining whether a police-citizen encounter was consensual or whether a seizure has occurred: "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *Jordan*, 635 F.3d at 1186 (citation omitted). Defendant has alleged no facts, and the Court has no reason to believe, that any of these factors might weigh in favor of a finding that Hudson's freedom of movement was restrained by physical force or by submission to a show of authority, so as to elevate the encounter from consensual (and therefore outside the scope of Fourth Amendment scrutiny) to a seizure (giving rise to Fourth Amendment review).

662 Fed.Appx. 780, 784 (11th Cir. Oct. 26, 2016) (citation and internal quotation marks omitted). For his part, Hudson acknowledges that the line of demarcation between a consensual encounter and a seizure is crossed when "a police officer accosts an individual and re[s]trains his freedom to walk away." (Doc. 22, ¶ 5.) There are no facts suggesting that Hudson's freedom to walk away was restrained or curtailed at any time prior to defendant's admission that he was carrying a firearm in his pocket.

Once Hudson acknowledged possession of a concealed pistol, the police-citizen encounter escalated to a brief seizure or investigatory detention, and was therefore subject to Fourth Amendment restrictions. "[L]aw enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *Jordan*, 635 F.3d at 1186 (citation and internal quotation marks omitted). Hudson's statement to officers that he was carrying a concealed firearm plainly furnished the requisite reasonable suspicion to justify the brief investigatory detention. *See, e.g., United States v. Lewis*, 674 F.3d 1298, 1304 (11th Cir. 2012) ("Based on McRae's admission that he was carrying a handgun in his waistband, the officers had reasonable suspicion to believe that McRae was committing a crime under Florida law – carrying a concealed weapon."); *Jordan*, 635 F.3d at 1187 (observing that "the presence of 'a visible, suspicious bulge' on an individual may give rise to reasonable suspicion … to conduct a *Terry* stop concerning a potential firearms offense"); *United States v. Baker*, 599 Fed.Appx. 904, 906 (11th Cir. Feb. 12, 2015) ("The record reveals that Gordon had informed one of the officers that Baker had a silver firearm, thus giving the officers reasonable suspicion that Baker illegally possessed a firearm."); *United States v. Montague*, 437 Fed.Appx. 833, 836 (11th Cir. Aug. 15, 2011) (finding reasonable suspicion for *Terry* stop of defendant where officers "had reasonable suspicion that he was carrying a concealed weapon based on a reliable informant's tip that [defendant] was carrying a gun"); *United States v. Allen*, 447 Fed.Appx. 118, 121 (11th Cir. Nov. 18, 2011) ("Allen's admission to having a firearm gave the officers the requisite reasonable suspicion" to escalate encounter from consensual to investigatory seizure). The Court thus finds as a matter of law that Hudson's admission that he was carrying a concealed weapon provided the necessary reasonable suspicion for the officers to conduct the

brief investigative detention that culminated in his arrest. The officers' handling of the encounter in this manner did not offend the Fourth Amendment.[4]

For all of the foregoing reasons, defendant's Motion to Suppress (doc. 16) is **denied**.

DONE and ORDERED this 23rd day of July, 2018.

                                                 s/ WILLIAM H. STEELE
                                                 UNITED STATES DISTRICT JUDGE

---

[4] In his reply brief, Hudson identifies as a separate ground for the Motion to Suppress his contention that the officers did not administer *Miranda* warnings before questioning him about the firearm (and, specifically, whether he had a permit to carry a concealed firearm). (Doc. 22, at 2-3.) Of course, Hudson "was entitled to *Miranda* warnings only if he was in custody at the time he made the statement[]" about not having a permit to carry a concealed firearm. *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see also United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) ("As a threshold question, we need to determine when Street was in custody, because pre-custodial questioning does not require *Miranda* warnings."). To be considered "in custody" for *Miranda* purposes, a defendant's circumstances must be such that "a reasonable person would have understood his freedom of action to have been curtailed *to a degree associated with formal arrest*." *Luna-Encinas*, 603 F.3d at 881 (citation omitted); *see also United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010) ("[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (citations omitted). Hudson identifies no facts that might reasonably support a finding that he was in custody at the time the police officers asked him if he had any contraband and if he had a permit for the concealed pistol he admitted he was carrying; therefore, no *Miranda* warnings were required.